UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THOMAS GLENWRIGHT, et al.,

               Plaintiffs,

                    -v-

XEROX CORPORATION,

               Defendant.
_____

**DECISION AND ORDER**

07-CV-6325L

## INTRODUCTION

Plaintiffs, fifteen former managers and employees of defendant Xerox Corporation ("Xerox" or "the Company"), bring this action, through counsel, alleging employment discrimination based upon age and/or sex in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e), and the New York State Human Rights Law ("NYSHRL"), Executive Law § 296, *et seq*. Xerox now moves for summary judgment dismissing the Plaintiffs' claims (Dkt. # 37). For the reasons that follow, Xerox's motion for summary judgment is granted and the complaint is dismissed.

## FACTUAL BACKGROUND

### I.    Xerox's Information Systems Policy and Training

In 2006, Xerox maintained a well-established policy regarding the use of its Information Technology Systems ("IT Policy"), including the use of its computer and e-mail systems. The IT Policy was contained in Xerox's Code of Conduct, which set forth the Company's expectations regarding its employees' behavior and ethics. The policy detailed the authorized use of Xerox's computers, e-mail, and software systems, and prohibited, *inter alia*, excessive personal use, chain

e-mail or virus hoaxes, and "any form of pornography." Dkt. #39, Ex. A at 6-7. The IT Policy also specifically stated that employees who misuse the Company's information systems "may be subject to disciplinary action, including termination " *Id.*

Xerox also maintained a separate Human Resources Policy entitled "Appropriate Usage Electronic Information Systems" ("HR Policy"). The HR Policy required that Xerox's electronic information systems, including computers, were to be used in support of business purposes "in a manner that maintains system integrity, functionality, and the highest ethical and legal standards." *Id.*, Ex. B. The HR Policy also contained a "prohibited use" provision, which disallowed employees from intentionally receiving, sending, viewing, downloading, or saving any "obscene or pornographic" material, or material that would otherwise violate Xerox Policies concerning non-discrimination and harassment. *Id.*, Ex. B at 2. In addition, the HR Policy provided for "disciplinary action, up to and including termination" against employees that failed to comply with the terms of appropriate usage of Xerox's electronic information systems. *Id.*

Xerox's internet usage policies also made clear that employees had no expectation of privacy with regard to their use of the Company's computer equipment or its information systems. Xerox's policy on "Privacy Rights" expressly denied privacy protection for any personal information stored on Xerox equipment, and provide that the Company would have unlimited access to any information stored on its computers or servers. Dkt. #39, Ex. A at 7.

Xerox provided mandatory periodic training on its Code of Conduct to its employees, including Plaintiffs. Plaintiffs testified at their respective depositions that they were familiar with the Xerox policies regarding appropriate usage of its IT systems.

## II.     Investigation and Disciplinary Actions

In April 2006, a manager in the Supplies Delivery Unit ("SDU") at Xerox conducted a routine "disk scrub" of several servers in SDU in order to make space on those servers. In the process of conducting that scrub, pornographic material was discovered in the shared user drives

belonging to three employees: Walter Lerminiaux, Michael Voight, and a third employee who is not a party to this action. As a result of those findings, Xerox launched an investigation to determine the origin and scope of the pornography. The investigation initially involved the aforementioned three employees, but over the course of the investigation, additional employees were found to have received, stored, and/or transmitted pornographic material. After those individuals were identified by Xerox Corporate Security, a joint effort between the Company's Corporate Security and Human Resources department resulted in individual interviews with all of the implicated employees. While the final disciplinary decisions were pending, individuals whose e-mail accounts contained particularly egregious content were temporarily suspended.

     Following each interview, a Policy Violation Investigation Report ("PVIR") was prepared summarizing the information obtained during the investigation as it related to each employee. The PVIRs contained factors that were considered in determining the appropriate disciplinary action to be taken with respect to each individual employee. Those factors included: (1) whether the employee's policy violations could have resulted in harm or embarrassment to the Company, or subject the Company to legal action; (2) whether the violation was intentional; (3) whether the employee involved others; (4) whether the employee was aware of Xerox's policies and whether he or she had completed Xerox's annual Code of Conduct training; (5) whether the employee was truthful during the investigation; (6) the employee's position in the Company; and (7) whether the employee had an opportunity to explain the circumstances.

     Final decisions regarding terminations, suspensions, and final warnings were based on the seriousness of the violations as demonstrated by the above-mentioned factors, as well as by additional criteria, such has how recently the employee was involved in sending/receiving pornographic material through e-mail, whether the employee sent the material or merely received it, whether the employee stored the material in a dedicated e-mail folder, whether the material was sent to outside Xerox vendors, the number of e-mails stored and/or sent, the number of people to whom the employee sent the material, and the graphic content of the offensive material.

One-hundred-forty-three (143) e-mail accounts were ultimately investigated and 88 employees were interviewed based on the presence of pornography on their computers. Thirty-two employees who were interviewed had no disciplinary action taken against them on the basis that they had received pornographic e-mails, but did not store them or transmit them to anyone else. Another group of thirty-two employees were given "final warnings" and were subjected to sanctions. Among that group were two female employees and twenty-two male employees over the age of 40. These individuals typically stored or sent three or fewer e-mails and/or the e-mails were sent only to their home computers, and not to Xerox employees or vendors.

The remaining twenty-four individuals who had been investigated were terminated[1] from employment, seventeen of whom became plaintiffs in the present action. Of this group, three men were under age 40, including Plaintiff Dearick Smith. The employees in the terminated group were found to have stored or sent over three graphic e-mails to multiple Xerox employees or Xerox vendors.

### III.   Procedural History

Subsequent to their termination from employment, Plaintiffs filed Charges of Discrimination against Xerox with the Buffalo District Office of the Equal Employment Opportunity Commission ("EEOC") in September, 2006, charging Xerox with unlawful age and sex discrimination. The EEOC made no determination but by notice dated March 30, 2007, Plaintiffs were notified by the EEOC of their right to sue.

This action was then commenced on June 27, 2007 (Dkt. #1), and Plaintiffs filed an amended complaint (Dkt. #2) the following day, alleging that Xerox's decision to terminate the Plaintiffs was based on age and gender discrimination in violation of, *inter alia*, the ADEA and Title VII of the Civil Rights Act of 1964.

---

[1] Two of those employees chose to retire in lieu of termination and two others were re-hired pursuant to an arbitration process provided by their bargaining unit.

There are currently fifteen active Plaintiffs in this action: Thomas Glenwright, Jerry Owens, Walter Lerminiaux, Jr., Michael Voight, Brian Desain, David Yaworski, Robert Turchetti, Robert Conger, Willie Ray Lonon, Dearick Smith, Michael Holdbrook, Joseph Daher, Gerald Cox, John Darcy, and Joseph Acquista. Plaintiff David Santo is now deceased and Louis Kurtic, Jr. was dismissed from this action in June, 2007. All the Plaintiffs, except for Cox and Smith (both aged 39),[2] were over the age of 40 when they were terminated.

## DISCUSSION

**I.     Summary Judgment**

When deciding a motion for summary judgment brought pursuant to Fed.R.Civ.Proc. 56, a court's responsibility is to determine whether there remain any issues to be tried. *Duse v. Int'l Bus. Machs. Corp.*, 252 F.3d 151, 158 (2d Cir.2001). Summary judgment should be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.' ... An issue of fact is 'genuine' if 'the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party.'" *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir.2001) (quoting *Anderson*, 477 U.S. at 248 ); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

These general principles regarding summary judgment apply equally to discrimination actions. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 524 (1993)) (reiterating that trial courts should not "treat discrimination differently from other ultimate questions of fact."). Although courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at

---

[2] Accordingly, Plaintiffs' ADEA claims of age discrimination are not applicable to these two named plaintiffs.

issue, *see Dister v. Cont'l Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988); *Montana v. First Federal Savings and Loan Ass'n of Rochester*, 869 F.2d 100, 103 (2d Cir.1989), "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to ... other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985)(summary judgment rule would be rendered sterile if mere incantation of intent or state of mind would act as a talisman to defeat an otherwise valid motion).

## II.    Age Discrimination

Plaintiffs' first through third causes of action assert claims of age discrimination based on disparate treatment[3] in violation of the the ADEA and NYSHRL.[4] Dkt. #2, ¶¶ 53-70.

ADEA disparate-treatment claims are analyzed using the burden-shifting framework enumerated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), the same analysis that is employed in discrimination cases brought under Title VII. *See Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir.2003).

First, a plaintiff must establish a *prima facie* case of age discrimination by showing that: (1) he was over 40 years old at the time of the relevant events; (2) he was performing satisfactorily; (3) he was discharged; and (4) the discharge occurred under circumstances giving rise to an inference of discrimination based on the plaintiff's age. *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994).

Once the plaintiff has made out a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory business rationale for its actions. When "the defendant has

---

[3]Although Plaintiffs' amended complaint also purports to allege claims of discrimination under a theory of disparate impact, they acknowledge in their summary judgment papers that "their claims do not fall within the ambit of the disparate impact paradigm." Dkt. #43-4 at 21. Accordingly, the claims will be analyzed only under the theory of disparate treatment.

[4] The analysis of age discrimination claims under the New York State Human Rights Law is the same as that under the ADEA. *See James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir.2000); *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir.2000).

made a showing of a neutral reason for the complained of action, 'to defeat summary judgment ... the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination.'" *Terry*, 336 F.3d at 138 (quoting *Stern v. Trustees of Columbia Univ. in City of New York,* 131 F.3d 305, 312 (2d Cir.1997)); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.2001); *James*, 233 F.3d at 154; *McDonnell Douglas Corp.*, 411 U.S. at 802-803.

The Supreme Court's decision in *Gross v. FBL Financial Services, Inc.*, ⎯⎯ U.S. ⎯⎯, 129 S. Ct. 2343 (2009) altered the third step of the analysis for claims brought under ADEA. *Gross* held that the aggrieved employee "must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action," rather than merely showing that age was one of the factors motivating the adverse employment action. *Gross*, 129 S. Ct. at 2351.

### 1. Similarly Situated Employees

In support of its motion, Xerox contends that there is no evidence to show that the Plaintiffs' terminations occurred in circumstances giving rise to an inference of age discrimination. Dkt. #37-10 at 13-16. The Court agrees.

 Among the circumstances that may give rise to an inference of discrimination are: (1) the employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position; (2) the employer's criticism of the plaintiff's performance in ethnically degrading terms or its invidious comments about others in the employee's protected group; (3) the more favorable treatment of employees not in the protected group; or (4) the sequence of events leading to the plaintiff's discharge or the timing of the discharge. *Chambers*, 43 F.3d at 37.

Plaintiffs' age discrimination claim rests on their allegation that, on the eve of a "Voluntary Reduction in Force" Xerox terminated the Plaintiffs for policy violations, where other employees under age 40 who were found to have violated the same policy were not terminated. In some

instances, the under-40 employees who were not let go replaced the Plaintiffs following their termination. Dkt. #43-4 at 4-5. The undisputed evidence, however, does not support Plaintiffs' contention that Xerox treated them less favorably than younger, similarly situated employees.[5]

To be similarly situated, Plaintiffs must show that they were similarly situated "in all material respects" to the individuals with whom they seek to compare themselves. *Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 64 (2d Cir.1997). "All material respects" does not, however, mean "all respects." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53–54 (2d Cir.2001). Thus, the alleged comparator need not "ha[ve] the same supervisor, work[ ] under the same standards, and engage[ ] in the same conduct." *Id.* at 53. Instead, the applicable standard requires only "a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *Id.* at 54. In this regard, a plaintiff must show that: (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards, and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness. *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir.2000). "The standard for comparing conduct," in turn, "requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases." *Id.*

It is undisputed that two out of the fifteen Plaintiffs were under the age of 40 at the time of their terminations. While there were thirty-two employees given "final warnings" (as opposed to termination), twenty-two members of that group were over age 40, or older than many of the named Plaintiffs. Plaintiffs provide no evidence that any of the individuals who received final warnings

---

[5] The Court disregards the Plaintiffs' 59-page submission entitled "Local Rule 56.1 Counter Statement" (Dkt. #43-2). The document was submitted in conjunction with their response to Xerox's 56.1 Statement of Facts (Dkt. #43-3) and a 25-page memorandum of law (Dkt. #43-4), and, as Xerox points out, Local Rule 56 does not provide for such a filing. *See* Loc.R.Civ.Proc. 56(a)(2) ("The papers opposing a motion for summary judgment shall include a response to each numbered paragraph in the moving party's statement, in correspondingly numbered paragraphs and, if necessary, additional paragraphs containing a short and concise statement of additional material facts as to which it is contended there exists a genuine issue to be tried.") In addition, Plaintiffs' counsel was already given significant instruction by this Court on the purposes of this rule. *See Spiess v. Xerox Corporation,* No. 08-CV-6211, 2011 WL 2973625 (W.D.N.Y. July 21, 2011) (Telesca, J.)

engaged in policy violations as serious as their own, and do not acknowledge the mitigating circumstances distinguishing such conduct and the various levels of discipline.

In their memorandum in opposition and in response to Xerox's statement of facts, Plaintiffs provide the names of at least twenty-four employees who they believe were similarly situated yet treated more favorably than Plaintiffs. However, nineteen of those individuals were as old or older than Plaintiffs (Dkt. #45-2, ¶ 3) and therefore were not outside of the protected class. Plaintiffs have not provided any admissible evidence that the remaining employees under 40 were similarly situated.

As stated earlier, the Plaintiffs must show that the situation between themselves and their comparators is so similar that it supports an inference that the difference in treatment is attributable to discrimination. *Khan v. Bank of Am., N.A.*, 572 F. Supp. 2d 278, 291 (N.D.N.Y. 2008), *aff'd*, 372 Fed. Appx. 216 (2d Cir. Apr 21, 2010) (unpublished opinion).

Xerox has submitted evidence that the investigation revealed that the e-mail accounts belonging to three of plaintiffs' alleged comparators did not contain anything of a pornographic nature. Dkt. # 45-2, ¶ 14. In addition, while Xerox's investigation did reveal that one of those three employees had sent one pornographic e-mail to a coworker in violation of the Company's policies, *see* Dkt. #43-8, Ex. E, such conduct was less egregious than the Plaintiffs' multiple violations.

The Plaintiffs' purported evidence relating to those individuals is not to the contrary. For example, Cox testified that the names of two of his alleged comparators were on the distribution list for many of "joke" e-mails. Dkt. #43-4, Ex. C, p. 67-68. Plaintiffs do not point to any evidence, however, that either of those employees sent or stored pornographic e-mails.

Plaintiff Owens testified at his deposition that he knew of an instance where two coworkers had exchanged inappropriate e-mails. Dkt. #43-5, Ex. J, p. 58. Yet Plaintiffs fail to provide evidence that those two employees were similarly situated. Xerox's investigation of one of them revealed that she had sent one e-mail containing pornography to two individuals, and received one e-mail containing pornographic images. Likewise, the investigation of the second employee indicated that while he had stored offensive images on a computer drive, the images in question were

9

dated between 1998 and 2001, and that the employee had no recent policy violations for receiving pornographic e-mails. Further, there was no indication that he had sent any pornographic e-mails. Both employees received final warnings as a result of their conduct.

Consistent with the actions taken against those employees issued a "final warning," no Plaintiffs were terminated for *sending* fewer than three pornographic e-mails. Under these circumstances, the Court finds that drawing an inference of age bias is unwarranted. *See Ruiz v. County of Rockland*, 609 F.3d 486 (2d Cir. 2010) (dismissing discrimination claim where plaintiff's comparators did not engage in equally serious violations of the policy and plaintiff otherwise failed to raise an inference of discrimination).

Plaintiffs also make the assertion that they "were replaced by younger, lower paid, less experienced personnel, including personnel who were found to have violated the same ethics policy for which Plaintiffs were terminated," in support of their argument that they have established an inference of discrimination. Dkt. #43-4 at 7. Plaintiffs point to no admissible evidence to support their claim.

Three Plaintiffs (Darcy, Cox, and Glenwright) claimed during their depositions that they were replaced by younger employees. The deposition transcripts indicate, however, that Darcy, Cox, and Glenwright had no personal knowledge about their replacements. For example, Glenwright testified that he was told that Mike Dugan (who was 40 at the time) replaced Darcy (age 46).[6] Similarly, Glenwright could not identify the younger person that replaced him, Dkt. 43-5, Ex. A. at 54, nor could Cox identify his replacement. Dkt. #43-4, Ex. C at 41. Glenwright further testified that some positions on his former team at Xerox were not refilled at all. Dkt. 43-5, Ex. A. at 54. Thus, Plaintiffs' categorical statement that they were replaced by younger employees is insufficient to raise a material issue of fact for trial in this case. *See O'Sullivan v. New York Times*, 37 F. Supp. 2d 307,

---

[6] Even if such a replacement did occur, it is not sufficient to create an inference of age discrimination because Dugan was not significantly younger than Darby. *See Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 78-79 (2d Cir. 2005); *cf. Stratton v. Dep't*, 132 F.3d 869, 879–80 (2d. Cir.1997) (fact that plaintiff's duties were taken over by individuals 13 and 26 years younger supports inference of discrimination).

319 (S.D.N.Y.1999) ("[A]llegations of replacement by younger workers do not, without more, prove discrimination.") (citing cases); *see also Suttell v. Manufacturers Hanover Trust*, 793 F. Supp. 70, 73 (S.D.N.Y.1992) (finding that the "mere fact" that a younger person was performing plaintiff's duties did not give rise to an inference of age discrimination).

Finally, Plaintiffs do not elaborate on their assertion that "while [the Company] was in the process of downsizing, Plaintiffs were terminated on the eve of a Voluntary Reduction in Force for alleged violations of a company policy, whereas other employees under the age of 40 who were found to have violated the same policy were not terminated, and, in some instances, Plaintiffs were replaced by those same employees under the age of 40 who violated the same company policy at issue." Dkt. #43-4 at 5.

Plaintiffs do provide an exhibit entitled "Voluntary Reduction in Force Memo" dated August 30, 2006 (Dkt. #43-8, Ex. A), which provided details about a proposed voluntary resignation and severance program for eligible employees. They do not, however, provide any proof that the pornography investigation was a ruse to purge the Company of its older workers, nor have they supplied any evidence beyond mere conjecture that any younger employees or new hires "went into positions similar, in level, unit, or duties, to those held by the plaintiffs." *Crawford v. Department of Investigation*, 324 Fed. Appx. 139, 142 (2d Cir. 2009) (unpublished opinion). "Lacking any such basis for comparison, the hire of young employees during a reduction in force does not raise an inference of discrimination." *Id.* (citing *Burger v. N.Y. Inst. of Tech.*, 94 F.3d 830, 833 (2d Cir.1996); *see also Montana*, 869 F.2d at 106-107 (finding that any inference of discrimination plaintiff claimed flowed from the retention of the six men while she was dismissed was nullified by evidence that a total of 45 managers, both men and women, were discharged pursuant to a reduction-in-force, while four men and four women were retained). Accordingly, the fact that Plaintiffs were terminated subsequent to an ethics investigation and prior to Xerox's Voluntary Reduction in Force does not support an inference of discrimination in this case.

## 2.     Pretext

Even if plaintiffs could make out a *prima facie* case of age discrimination, Xerox has demonstrated that it had a legitimate, nondiscriminatory reason for its actions, and the evidence does not support an inference that Xerox's proffered reason is a pretext for unlawful age discrimination.

It is clear in this case that Xerox's termination of the Plaintiffs was effected pursuant to a Company policy prohibiting the use of its computer systems for the receipt, storage, and distribution of pornography and other offensive materials, and that Xerox had a legitimate basis for concluding that Plaintiffs had violated that policy.  It is undisputed that Xerox maintains a Code of Conduct that contains specific provisions regarding the use of its IT systems, including specific provisions covering the type of conduct that Plaintiffs engaged in here. Those provisions clearly prohibit illegal activity, harassing or threatening communications, and any form of pornography. Likewise, the Appropriate Usage Policy (HR Policy) proscribes the use of Xerox information systems to view, store or transmit any type of offensive content, including pornography.  All knew that sanctions, including terminations, could result from such conduct.

The ADEA's prohibition against age discrimination does not insulate employees over age 40 from legitimate job actions based on their own misconduct.  Thus, numerous courts have held that an employer may terminate an employee who violates company policies prohibiting the use of its computer systems for sending and receiving sexually explicit materials.  *See, e.g., Pacenza v. IBM Corp.*, 363 Fed. Appx. 128, (2d Cir.2010) (summary order) (employer's proffered reason for firing disabled plaintiff because he violated company policies by accessing sexual materials company computer systems was legitimate and nondiscriminatory and was not a pretext for disability discrimination); *accord, Spiess*, 2011 WL 2973625 at * 4; *Lugo v. Shinseki*, No. 06 Civ. 13187, 2010 WL 1993065, *14 (S.D.N.Y. May 19, 2010) ("The sending and accessing of sexually explicit materials on a work computer is a legitimate, nondiscriminatory ground for an adverse action."); *see generally Liburd v. Bronx Lebanon Hosp. Center*, No. 07 Civ. 11316, 2009 WL 900739 (S.D.N.Y. Apr. 3, 2009) (Termination for plaintiff's violating "Computer and Other Electronic Equipment

Policy" was legitimate, nondiscriminatory purpose); *Dinkins v. Suffolk Transp. Service, Inc.*, No. 07-CV-3567, 2010 WL 2816624 (E.D.N.Y. 2010) (violation of company policy is legitimate reason for employee's termination) (collecting cases).

Xerox has provided a substantial evidentiary basis, including Policy Violation Investigation Reports, the explicit e-mails at issue, and the policies at issue to establish that the Company had a good faith belief that the Plaintiffs violated said policies. *See Pancenza v. IBM Corp.*, No. 04 Civ. 5831, 2009 WL 890060, *14 (S.D.N.Y. Apr. 2, 2009). Moreover, Plaintiffs do not deny that they accessed, sent, stored, and/or received pornographic material on their Company computer systems.

Because Xerox has put forth a legitimate reason for the Plaintiffs' terminations, the burden shifts back to the Plaintiffs to "show that the proffered reason was merely a pretext for discrimination, which may be demonstrated either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the *prima facie* case, without more." *Heyman v. Queens Village Comm. for Mental Health for Jamaica Cmty. Adolescent*, 198 F.3d 68, 72 (2d Cir.1999) (quotation omitted). For purposes of the Plaintiffs' ADEA claims, "to satisfy their burden at the final stage, plaintiffs must offer evidence that age discrimination was the 'but-for' cause of the challenged actions." *Holowecki v. Federal Exp. Corp.*, 382 Fed. Appx. 42 (2d Cir.2010) (citing *Gross,* 129 S. Ct. at 2350)).

Plaintiffs argue that a reasonable jury could conclude that age was the "but for" reason for their terminations on that grounds that, *inter alia*, Xerox departed from a "progressive" disciplinary policy, which provided for a warning for a first offense, that the exchange of pornography was "commonplace" at Xerox among managers and lower-level employees, and that union employees were reinstated after violating the same policy. Dkt. #43-4, p. 9-16.

With regard to Xerox's disciplinary policy, Plaintiffs' own evidence shows that disciplinary measures for violations of the Company's internet usage policies range from a warning to discharge for a first offense. Dkt. #43-8, Ex. F, at 73. Nowhere is it stated that first offenders will necessarily

be let off with a warning. This case, in fact, demonstrates the apparent rationale for making available a range of penalties, since internet usage violations themselves can differ in their degree of seriousness. Moreover, Xerox's Code of Conduct and HR Policy concerning computer usage expressly advised employees that violations could result in discipline, up to and including termination from employment.

Accordingly, Plaintiffs' contention that Xerox somehow failed to follow its own disciplinary policy is belied by their own evidence. Simply because Plaintiffs believe they should have received a warning instead of termination from employment is of no moment, because it is not the province of this Court to second-guess the Company's business decisions. *See Seils v. Rochester City School Dist.*, 192 F. Supp. 2d 100, 111 (W.D.N.Y. 2002) (collecting cases). "What matters is why [the employer] did what it did, not whether it was wise to do so." *Id.*

Plaintiffs also contend that other Xerox employees routinely sent sexually graphic and gruesome e-mails for several years prior to the May, 2006 investigation. Dkt. #43-4, p. 8, 12-13, 16. This does not serve to create a material fact, however, because the existence of Xerox's ethics policies is not negated by claims that other employees disregarded or misunderstood them. *See Speiss*, 2011 WL 2973625 at *5.

Plaintiffs' argument that "union employees were reinstated after violating the same policy [as Plaintiffs]" is particularly specious. *See* Dkt. #43-4 at 15. The two union members identified by Plaintiffs were terminated from their employment and returned to work as part of a grievance and arbitration process. Dkt. #39, ¶ 17. The Court is unclear as to how the two employees' status as union members has anything to do with the instant claims. However, the two named union employees were 59 and 53 years old at the time of the investigation (Dkt. #45-2, ¶ 17), and therefore any purported favorable treatment of them could not raise a genuine issue for trial as to Plaintiffs' age discrimination claims.

In light of the foregoing, Plaintiffs cannot prove that they were terminated "but for" their age. *See Gross,* 129 S. Ct. at 2351. Accordingly, Xerox is entitled to summary judgment with respect to Plaintiffs' claims of age discrimination under the ADEA and NYSHRL.

### B. Sex Discrimination

In their Fourth Cause of Action, Plaintiffs allege that Xerox's practice of enforcing its policies "harm[s] male employees and favor[s] female employees" in violation of Title VII. Dkt. #2, ¶¶ 71-73. As stated earlier, Plaintiffs' claims of employment discrimination pursuant to Title VII are subject to the burden-shifting analysis articulated in *McDonnell Douglas*.

Here, Plaintiffs have failed to provide evidence upon which to infer sex discrimination and thus cannot make out a *prima facie* case of discrimination. As with their age claims, Plaintiffs cannot show that they engaged in acts of comparable seriousness, but were punished more severely than similarly-situated female coworkers, *see Graham*, 230 F.3d at 40, and that they were similarly situated in all material respects to those female coworkers. *See Shumway*, 118 F.3d at 64.

Following Xerox's investigation, two female employees, who were each found to have sent one e-mail that was pornographic in nature, were given final warnings for their violations of the HR Policy. The evidence shows, however, that the same punishment was meted out to their male coworkers who were also found to have sent a single pornographic e-mail. It is also clear from the record that these female employees' conduct was less egregious than that of Plaintiffs, who had sent multiple pornographic e-mails.

No reasonable factfinder, then, could conclude that Plaintiffs and their purported comparators were similarly situated under these circumstances. Accordingly, no inference of discrimination could be drawn here, and Plaintiffs' claims of sex discrimination must be dismissed because they have failed even to make out a *prima facie* case of discrimination under the *McDonnell Douglas* framework.

## CONCLUSION

Xerox's motion for summary judgment (Dkt.#37) is granted, and Plaintiffs' complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       December 14, 2011.